[Crim. No. 505.   Second Appellate District.—November 16, 1916.]

## THE PEOPLE, Respondent, v. ARTHUR HORGAN, Appellant.

CRIMINAL LAW—ROBBERY—IMMUNITY OF WITNESSES FROM PROSECUTION FOR GAMBLING — LIMITATION OF CROSS-EXAMINATION — LACK OF PREJUDICE.—Upon the trial of a defendant upon an information jointly charging him with two other persons with the crime of robbery in taking by means of force and fear a specified sum of money from the possession and person of the prosecuting witness, the defendant is not prejudiced by the rulings of the court in limiting the cross-examination of the prosecuting witness and certain other persons appearing as witnesses on behalf of the prosecution, concerning circumstances from which the jury might make the deduction that the witnesses, who were at the time of the commission of the offense engaged in gambling, were promised immunity from prosecution for that offense, where it is made to appear that the cases against them were dismissed without their knowledge, and upon the order of the justice before whom the actions were pending.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial. H. T. Dewhirst, Judge.

The facts are stated in the opinion of the court.

Frank T. Bates, Walter J. Hartzell, and Charles L. Allison, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

SHAW, J.—The defendant with James Allen and Dan Boyd were by information jointly charged with the crime of robbery, in that by means of force and fear they took from the possession and person of Jacob Widener, the prosecuting witness, the sum of $40, lawful money of the United States.

Upon a separate trial from his codefendants, Horgan was convicted of the crime as charged. His appeal is from the judgment pronounced, and from an order of court denying his motion for a new trial.

The alleged offense occurred in the city of Needles, California, at which place Boyd, Allen, and defendant arrived at about 10:30 P. M. on January 15, 1916, coming from Oatman, Arizona, where they had been employed as laborers in the mines. Upon arriving at Needles, Boyd and Allen obtained a room at a lodging-house at which they registered, and then, with defendant, visited saloons and restaurants around the town until about 1 o'clock the next morning, when they went to a gambling-house conducted by one Faust in the basement of a building where a game of draw poker was in progress. Defendant and Allen each bought some $20 worth of chips from Faust and entered the game, in which Faust, Widener, and some three or four others were engaged. After playing for some time and losing the $20 which he had invested in chips bought from Faust, Horgan left the table and stood watching the game near Allen who continued playing. In the deal immediately preceding the "hold up" Allen drew an ace-king flush upon which, before other cards were drawn by the players, he raised the ante or bet. All but one of the other players laid down their hands. This player drew three cards, which, with the two cards retained, gave him three

queens and a pair of jacks, upon which he won the stakes. Thereupon Allen, turning to defendant, said: "That is an awful way they have of getting our money." At this Horgan drew his gun and, pointing it at the crowd, ordered them to hold up their hands, saying: "All you —— of —— hold up your hands. I have got the best hand now." Thereupon Allen proceeded to take from Widener some $35 or $40, and from others, including Faust, who was conducting the game, he took various sums. Then, compelling Faust to open the door, they left by the stairway leading from the basement, immediately following which there was an exchange of shots between Faust on the one side and defendant on the other. They took a train about to leave Needles, getting off at Yucca, from which place they came to Los Angeles, thence to San Diego, where they were arrested.

It appears that Faust, Widener, and others engaged in playing were arrested for gambling and, after testifying at the preliminary hearing of the charge against Allen, Boyd, and defendant, the cases against them were dismissed.

At the trial of defendant two defenses were interposed: (1) That while admitting his part as stated in the hold-up, and admitting that they did, in the manner stated, take money from the table and from the person and possession of Faust, they assert they took none whatsoever from Jacob Widener, named in the information as the victim of the robbery. (2) That in taking money from Faust they were retaking their own money which had been obtained from them by means of trick and fraud. As to both of these questions it is conceded there was a direct conflict of evidence. There is ample evidence to show the taking of money from the possession of Widener, and the statement of defendant and those jointly charged with him, which is little more than a surmise of fact based upon what they conceived to be the probability thereof, that in the last hand played by Allen his opponent was dealt three cards off the bottom of the pack, which statement is directly contradicted by another witness. However, even were it true that Allen lost the money bet on this last hand by reason of the fraud claimed, it by no means follows, nor is there any evidence that defendant lost his money or any of it by reason of like acts of Widener whom he robbed; nor is there any evidence showing that Faust was a party to such alleged fraud and trickery.

As stated, Faust, Widener, and others of those engaged in
playing were arrested and charged with gambling. After
they had testified at the preliminary hearing of defendant, the
cases against them were dismissed. On cross-examination,
questions were asked of Widener and others appearing as wit-
nesses in behalf of the prosecution, the purpose of which it
is claimed was not to show directly a promise of immunity
pursuant to which the dismissals were had, but to show cir-
cumstances from which the jury might make such deduction.
Conceding the court might properly have granted defendant
greater latitude on cross-examination, nevertheless, in view of
the fact that it fully appears the cases were all dismissed with-
out the knowledge of the witnesses and that they did not know
why such action was taken, no prejudice could result from
the rulings. This is particularly true, since it was conclu-
sively shown by the testimony of the district attorney, called
by defendant as a witness, that the dismissals were not had
upon any suggestion or agreement made with defendants, but
that such action was taken by the justice before whom the ac-
tions were pending, by reason of a statement made to him by
the district attorney, as shown in answer to the question: "Mr.
Hert, I will ask you whether or not it is a fact that the dis-
missal of these cases in Needles was obtained because of the
fact that the witnesses had informed you, or you had been in-
formed from some source which you understand came from
the witnesses, that they would not be here for this case unless
those cases were dismissed?" An objection to this question
being overruled, the district attorney replied: "No. At the
time the preliminary examination was held these men came
in and testified; these witnesses that have testified here came
up and testified, and after they had testified Judge Covage
asked me what I thought about it, and I said, 'They have got
it on you now, as section 1324 has not been read to them.
Even if it was read to them they are exempt from prosecution
in this case, and I don't see where you will get anywhere with
your prosecution against those fellows for gambling.' " The
court further stated to defendant's attorney: "If you desire
to ask him if there was a promise of immunity by the district
attorney's office or any reward, you may ask that."

Other rulings in excluding evidence as to whether or not
the witnesses were regular patrons of Faust's place, the pur-
pose of which it is claimed was to show that he conducted a

"crooked game," were proper. The question involved was whether defendant's money was obtained by trick or fraud, and the fact that some of the witnesses frequented the place did not tend to prove that defendant's money had been obtained by larceny, as defined in section 332 of the Penal Code. Other rulings in excluding evidence are likewise without merit. In no event could defendant's substantial rights have been prejudiced thereby, since upon the evidence adduced by him in his own behalf the jury could not properly have reached a different verdict from that rendered.

Defendant requested the court to give two instructions, one of which was given as modified and the request as to the other was denied. These instructions were in effect the purpose for which evidence of the taking of money from others than Widener was introduced, namely, to show intent of the defendant with respect to the offense charged; and that if he did not take any money from Widener, but took it from Faust who had obtained it by trick and device, defendant should be acquitted. The subject of these instructions seems to have been fully covered by instructions given elsewhere, that in order to justify a verdict of guilty the jury must be satisfied beyond a reasonable doubt that the money alleged to have been taken by defendant was in fact taken from the possession of the complainant Jacob Widener. The jury was also instructed as to what constituted larceny by trick and device, and told that property obtained in such manner was not the subject of larceny by the rightful owner thereof from which the property was so taken; and likewise instructed as to the purpose of admitting evidence showing the taking of money from others than Widener who were present, and expressly told that defendant was being tried solely and alone for the robbery of Jacob Widener. It is apparent, under the instructions given, that the jury could not have reached a verdict of guilty unless they were satisfied beyond a reasonable doubt that defendant, or persons acting under his instructions and orders, by means of force accomplished by the use of a gun and the fear resulting from the use thereof, unlawfully took the money from the person and possession of Jacob Widener, as to whom there is not the slightest evidence that he had obtained defendant's money in the manner pointed out in section 332 of the Penal Code.

The record discloses no error whereby defendant's substantial rights could have been prejudiced, and the judgment and order are, therefore, affirmed.

Conrey, P. J., and James J., concurred.